IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DARLENE BROWN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 07-0099-WS-C |
| | ) |
| **KABCO BUILDERS, INC.,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on Plaintiff's Motion to Remand (doc. 5). The parties have exhaustively briefed the jurisdictional question presented, and the Motion is now ripe for disposition.[1]

**I.     Background.**

On January 12, 2007, plaintiff Darlene Brown initiated this action by filing a sprawling 34-page, 129-paragraph, 27-count Complaint against named defendants Kabco Builders, Inc.("Kabco"), Hambone's Mobile Home Liquidators, Inc. ("Hambone") and PFS Corp. ("PFS") in the Circuit Court of Clarke County, Alabama. The gravamen of the Complaint was Brown's contention that the 2005 Kabco mobile home that she purchased from Hambone on June 4, 2005 for the cash purchase price of $82,500 was defective, and that defendants had misrepresented that the home was free from defects and that any defects the plaintiff might discover would be promptly repaired to her satisfaction. According to the Complaint, when Brown brought the

---

[1] This action is one of a rash of similarly situated actions involving identical counsel and similar or identical legal issues that have been removed to this District Court in the last two months. The others include *Ready v. River Birch Homes, Inc.*, Civil Action 07-0031-WS-B; *McRand v. Champion Homes of Boaz*, Civil Action 07-0033-KD-M; *Carstarphen v. River Birch Homes, Inc.*, Civil Action 07-0055-WS-M; *Waller v. Advantage Homes*, Civil Action 07-0115-BH-C; *Hill v. River Birch Homes, Inc.*, Civil Action 07-0136-WS-B; *Holmes v. Kabco Builders, Inc.*, Civil Action 07-0069-WS-C; *Sanders v. Gateway Homes, Inc.*, Civil Action 07-0098-BH-C; *Foster v. River Birch Homes, Inc.*, Civil Action 07-0117-BH-C; *Smith v. River Birch Homes, Inc.*, Civil Action 07-0118-BH-C; and *Sloan v. River Birch Homes, Inc.*, Civil Action 07-0165-WS-B.

defects to defendants' attention, defendants failed and refused to remedy them, in breach of their warranty obligations.

On February 8, 2007, defendant Kabco, acting with the written consent of Hambone and PFS, removed this action to this District Court pursuant to 28 U.S.C. §§ 1331 and 1441. Kabco predicated subject matter jurisdiction on § 1331, which confers original jurisdiction to district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In particular, Kabco pointed to the Twenty-First Cause of Action, in which Brown alleged that defendants had violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA"), by breaching certain written warranties furnished to plaintiff pursuant to the sales transaction.[2] The *ad damnum* clause of that MMWA cause of action requested entry of judgment against defendants "in an amount less than the sum or value of $50,000.00 (exclusive of interest and costs)." (Complaint, at 25.)

On February 9, 2007, plaintiff filed a Motion to Remand (doc. 5) for lack of federal subject matter jurisdiction. This Motion hinges on the MMWA's explicit exclusion of federal jurisdiction for MMWA claims in which the amount in controversy is less than the sum or value of $50,000 (exclusive of interest and costs). *See* 15 U.S.C. § 2310(d)(3)(B). Plaintiff contends that this jurisdictional hurdle is not satisfied here, and that federal jurisdiction is therefore lacking. Kabco has submitted a memorandum of law in opposition, and the issue is now squarely presented.

## II.    Legal Standard.

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, bears the burden of establishing the existence of federal jurisdiction. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the

---

[2]    According to the Complaint, defendants breached these warranties by failing to repair or otherwise cure certain enumerated defects (including structural defects, plumbing defects, cracked walls, doors and windows that do not open or close properly, warped and bowed walls, leaks, condensation, vapor barrier in the wrong location, and vinyl on gypsum in interior side of exterior wall) in the mobile home. (Complaint, ¶¶ 96, 100.) The Complaint alleged that plaintiff notified defendants of those defects and afforded them a reasonable opportunity to comply with the warranty; and alternatively alleged that defendants knew or should have known about the defects at the time of sale, or that the defects could not be cured. (*Id.*, ¶¶ 97-99.)

burden of proving proper federal jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

**III.   Analysis.**

   ***A.   The Jurisdictional Amount and the Legal Certainty Test.***

In removing this action to federal court, Kabco relied exclusively on the MMWA cause of action, which it maintained gives rise to federal question jurisdiction. From the face of the statute, however, it is clear that original federal jurisdiction exists over a MMWA cause of action only if the amount in controversy is at least $50,000. *See* 15 U.S.C. § 2310(d)(3)(B); *Ansari v. Bella Automotive Group, Inc.*, 145 F.3d 1270, 1271 (11th Cir. 1998); *Torres-Fuentes v. Motorambar, Inc.*, 396 F.3d 474, 475-76 (1st Cir. 2005); *Grubbs v. Pioneer Housing, Inc.*, 75 F. Supp.2d 1323, 1326 (M.D. Ala. 1999) ("in order for a federal court to exercise jurisdiction of a claim under the [MMWA], the amount in controversy must be at least $50,000, exclusive of interests and costs"). In determining whether the $50,000 threshold is satisfied, the Eleventh Circuit has found that "the amount in controversy for purposes of [the MMWA] does not include damages flowing from any pendent state law claim brought by a plaintiff." *Ansari*, 145 F.3d at 1272; *see also Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1297 n.5 (11th Cir. 1999) (reaffirming that the only claims a district court could consider in determining whether § 2310(d)(3) jurisdictional amount was satisfied were claims under MMWA for breach of

warranty).³  Furthermore, in making this calculation in the MMWA context, "resort to state law is proper in determining the applicable measure of damages."  *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979); *see also Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (looking to state law to determine remedies available and potential amount in controversy in MMWA claim).

The *ad damnum* clause of Brown's MMWA cause of action expressly demands judgment against defendants "in an amount less than the sum or value of $50,000.00 (exclusive of interest and costs)."  (Complaint, at 25.)  Where, as here, a plaintiff specifically pleads a damages amount below the jurisdictional threshold, the Eleventh Circuit has found that such a pleading "deserves deference and a presumption of truth.  We will not assume - unless given reason to do so - that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of his client's case."  *Burns*, 31 F.3d at 1095.  If a defendant removes the case to federal court, notwithstanding the plaintiff's specific pleading of a sub-jurisdictional minimum damages amount, then in order to avoid remand that "defendant must prove to a legal certainty that plaintiff's claim must exceed" the jurisdictional amount.  *Id.*  Thus, to obtain a federal forum, a removing defendant must establish that "an award below the jurisdictional amount would be outside the range of permissible awards because the case is clearly worth more than $50,000."  *Id.* at 1096; *see also Sapp v. AT & T Corp.*, 215 F. Supp.2d 1273, 1278 (M.D. Ala. 2002) (applying *Burns* to render it incumbent on removing defendant to prove to legal certainty that any recovery by plaintiff must exceed jurisdictional amount, where plaintiff expressly limited damages sought in complaint to amount below jurisdictional minimum); *Lindsay v. American General Life & Accident Ins. Co.*, 133 F. Supp.2d 1271, 1274 (N.D. Ala. 2001) (opining that the "legal certainty" test is "strict" and is not satisfied unless removing defendant shows to a legal certainty that award below jurisdictional amount would be outside range of legally permissible

---

³       *See also Grant v. Cavalier Mfg, Inc.*, 229 F. Supp.2d 1332, 1334 (M.D. Ala. 2002) ("In determining the amount in controversy, courts should only look to the actual claim brought under the MMWA."); *Matthews v. Fleetwood Homes of Georgia*, 92 F. Supp.2d 1285, 1288 (S.D. Ala. 2000) ("[I]n determining whether the amount in controversy exceeds $50,000, exclusive of interests and costs, the undersigned focuses on the lone Magnuson-Moss Warranty Act claim asserted by the plaintiffs in their complaint and does not consider the damages flowing from the numerous state law claims asserted by the plaintiffs.").

outcomes).[4]  The central battleground animating the Motion to Remand is whether defendants have met their burden of proving to a legal certainty that Brown could not permissibly recover less than $50,000 on her MMWA cause of action.

### B.    Application of the Legal Certainty Test.

In its Notice of Removal and the ensuing briefing on the Motion to Remand, Kabco has proffered a series of arguments in an attempt to satisfy the "legal certainty" test.  As an initial matter, Kabco points to the *ad damnum* clauses of several of the pendent state-law causes of action, in which plaintiff requested relief including rescission of the contract and a refund of all amounts paid by plaintiff.  (Notice of Removal, at 5.)  Because the contract value exceeded $82,000, Kabco contends, the jurisdictional amount would necessarily be satisfied if Brown received these remedies.  As previously noted *supra*, however, the law in this Circuit is clear that the only claim that may be considered in determining whether the § 2310(d)(3) jurisdictional threshold has been satisfied is the MMWA claim, and that the accompanying state-law claims may not be weighed in that inquiry.  *See Boyd*, 188 F.3d at 1296 n.5; *Ansari*, 145 F.3d at 1272.  As such, the relief sought in non-MMWA claims is of no consequence in the § 2310(d)(3) analysis.[5]

---

[4]     *Burns* was a case in which federal removal jurisdiction was predicated on diversity of citizenship, rather than a federal question by virtue of an MMWA cause of action.  Nonetheless, there is no logical reason to believe that the *Burns* "legal certainty" test would not apply with equal force to the MMWA jurisdictional threshold, and both sides have relied on the *Burns* standard in framing their respective arguments.  Accordingly, the Court will do the same.

[5]     The Court similarly rejects Kabco's related argument that the relief sought on all of plaintiff's state-law express warranty claims may be considered in determining the amount in controversy because all of those state-law claims "are governed by the Magnuson-Moss Warranty Act." (Notice of Removal, ¶ 18.)  This remarkable assertion implies that the MMWA mandates superpreemption of state-law claims for breach of express warranty, such that those state-law claims are governed by the MMWA, regardless of how they were pleaded.  The Court is unaware of any authority, and defendants have cited none, ascribing such extraordinary preemptive qualities to the MMWA.  Indeed, the only case cited by defendants on this point is *Matthews v. Fleetwood Homes of Georgia*, 92 F. Supp.2d 1285 (S.D. Ala. 2000).  Kabco seizes on language in *Matthews* wherein the court looked to a "breach of warranty" count to determine the § 2310(d)(3) amount in controversy.  But that construction misconstrues the circumstances in *Matthews*.  Indeed, the *Matthews* court turned to the breach of warranty count in the very next paragraph after indicating that the court would focus exclusively on the MMWA claim, and not

Next, Kabco maintains that the "legal certainty" requirement is satisfied because the statutory remedy for violation of the MMWA is as follows: "[I]f the product ... contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor ***must permit the consumer to elect either a refund for, or replacement without charge of, such product*** ...."  15 U.S.C. § 2304(a)(4) (emphasis added).  Kabco reasons that, because Brown has requested rescission or a refund in some of her state-law causes of action (but not the MMWA count), she has effectively elected a refund for § 2304 purposes.  The purchase price of the mobile home having been $82,500 and plaintiff being entitled to a refund of that purchase price if she prevails, Kabco continues, the lowest point in the range of permissible awards for the MMWA cause of action would be $82,500, and any diminution of that value would be improper.  This reasoning suffers from two glaring flaws.  First, it ignores the fact that the statutory remedies set forth in § 2304 do not apply to limited warranties of the kind invoked by Brown, but instead apply exclusively to full warranties.  *See MacKenzie*, 607 F.2d at 1166 n.7 ("The remedies set forth in 15 U.S.C. § 2304 are applicable ***only to 'full' warranties, those meeting the requirements of that section***.") (emphasis added); *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 919 n.4 (9th Cir. 2005) (§ 2304 applies to "full warranties," not "limited warranties"); *Schimmer*, 384 F.3d at 405 (limited warranties under MMWA are not subject to § 2304 and are thus not subject to its substantive remedies, including refund of purchase price).[6]  As neither side suggests that the limited warranty at issue in this case

---

any state-law claims, in determining whether the $50,000 minimum was in controversy.  92 F. Supp.2d at 1288.  This context strongly suggests that the "breach of warranty" claim mentioned was in fact the MMWA cause of action.  Accordingly, *Matthews* lends no support to defendants' efforts to import the *ad damnum* clauses from state-law breach of warranty claims into the analysis of the MMWA jurisdictional threshold.  More generally, the text of the MMWA allows a plaintiff who is damaged by a defendant's failure "to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract," to sue in state court or, in certain limited circumstances, federal court.  15 U.S.C. § 2310(d)(1).  This provision cannot logically be read as mandating that all state-law claims for breach of warranty filed in state court are automatically, necessarily governed by the MMWA, irrespective of how the plaintiff (the master of her complaint) has framed them.

[6] Kabco answers plaintiff's "limited warranty" point by asserting that under Alabama law a limited warranty is treated as a full warranty when it fails of its essential purpose.

satisfies the requirements of § 2304, it appears highly unlikely that the refund remedy prescribed by § 2304 is even available to plaintiff in this case.

Second, even if Brown, upon prevailing in the MMWA cause of action, were entitled to a refund of the purchase price of her mobile home, it is far from certain that her damages could never dip below $50,000. As mentioned, the purchase price of the home was $82,500. If Brown were to prevail on her MMWA claim and secure a refund, Kabco assumes that the full purchase price must necessarily be refunded to her. That assumption is incorrect. Appellate courts have recognized that a plaintiff who revokes acceptance and receives a refund of the purchase price under the MMWA must surrender possession of the good to the seller and must afford the seller a credit for the value that the purchaser received from his use of the good while it was in his possession. *See Schimmer*, 384 F.3d at 405 (for purposes of § 2310(d) amount in controversy, if plaintiff is permitted to receive refund of purchase price of vehicle, seller can re-take possession of vehicle and can receive credit for value that plaintiff received from use of vehicle while it was in his possession); *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 884-85 (6th Cir. 2005) (explaining

---

It appears to be a correct statement of Alabama law that, where a limited warranty fails of its essential purpose, the contractual limitation of remedies is of no force and effect. *See, e.g., Volkswagen of America, Inc. v. Harrell*, 431 So.2d 156, 164 (Ala. 1983) (observing that a contract limitation of remedies in a warranty will not be allowed when circumstances cause the exclusive or limited remedy to fail of its essential purpose); Ala. Code § 7-2-719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title."). But defendants do not explain why Alabama state law should override the specific statutory provisions in the MMWA as to the prerequisites that must be satisfied for § 2304 remedies to apply. It is the terms of the MMWA, and not Alabama state law, that govern whether § 2304(a)(4) remedies are available to a purchaser. Defendants point to nothing in the MMWA or its interpretive caselaw that would require, or even permit, the recharacterization of a limited warranty to a full warranty, as those terms are used in 15 U.S.C. § 2303(a), for purposes of determining eligibility for a refund under § 2304(a)(4). To the contrary, the *MacKenzie* court expressly stated that a warranty is a "full warranty" under 15 U.S.C. § 2304 only if it meets the requirements of that section. 607 F.2d at 1166 n.7. *MacKenzie* certainly cannot support the proposition that Alabama law, rather than the statutory terms themselves, should be applied in deciding whether a warranty is a "full warranty" for § 2304 purposes. Of course, it is generally true that state law is used in determining the measure of damages under the MMWA. *See generally MacKenzie*, 607 F.2d at 1166 ("resort to state law is proper in determining the applicable measure of damages under the [MMWA]"); *Schimmer*, 384 F.3d at 405 (looking to state law to determine remedies available in MMWA case). But that general proposition in no way usurps or negates the specific requirements of § 2304.

that even if purchase price exceeds amount in controversy and even if plaintiff is entitled to refund, MMWA amount in controversy requirement may not be satisfied because contract price must be reduced by present value of vehicle and value that plaintiff obtained from it); *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 402 (3rd Cir. 2004) (declaring that for MMWA claim, party asserting federal jurisdiction must allege cost of replacement vehicle, minus both the present value of the defective vehicle and the value that plaintiff received from defective vehicle).[7]

Simply put, then, the value of any refund / revocation of acceptance remedy that Brown might receive is not simply the $82,500 purchase price for the mobile home.  Plaintiff does not automatically, necessarily stand to gain $82,500 or more if she prevails on a claim for refund based on breach of warranty.  If she prevails on a MMWA claim to revoke her acceptance, then she will have to return the mobile home to defendants in order to receive that refund.  That mobile home may (or may not) have some resale or salvage value, which plaintiff will lose by relinquishing possession of the home.  Moreover, defendants will be entitled to a credit on the refund price for the value that Brown received from use of the mobile home while it was in her possession.  Thus, correctly stated, the true value of any refund remedy that plaintiff might receive, and hence the true amount in controversy, equals the difference between the original purchase price of the mobile home and the value of the mobile home in its present state, with that figure reduced additionally by the value of plaintiff's beneficial use of the mobile home in the interim.  *See Schimmer*, 384 F.3d at 405-06 (plaintiff's "true money damages - and concomitantly, the true amount in controversy - would equal only the difference between the price of the new car and the worth of the allegedly defective car, reduced by his beneficial use of the defective car").  What is the value of those offsetting amounts?  Perhaps the parties intend to call expert or fact witnesses at trial to offer facts and opinions as to the resale or salvage value of

---

[7] The appellate cases cited above originate in the Third, Sixth and Seventh Circuits, which appear to be the only federal appeals courts to have considered this question.  The undersigned has not located, and the parties have not cited, any Eleventh Circuit decision quantifying the value of a revocation of acceptance remedy in the MMWA context; however, given that the Third, Sixth and Seventh Circuit approach stands without appreciable criticism from other courts or even from defendants in this case, the Court will apply it here.

the mobile home, and the value that plaintiff derived from living in it. Irrespective of their intentions, that determination cannot be made today to any degree of certainty, much less to a legal certainty, as would be needed to override the Complaint's unequivocal declaration that the relief sought on the MMWA cause of action is less than $50,000.[8]

More generally, the parties agree that under Alabama law, damages recoverable under a breach of warranty claim are measured by "the difference ... between the value of the goods accepted and the value they would have had if they had been as warranted. ... In a proper case any incidental and consequential damages ... may also be recovered." Ala.Code § 7-2-714(2) & (3); *see also Matthews v. Fleetwood Homes of Georgia*, 92 F. Supp.2d 1285, 1288 (S.D. Ala. 2000). The value of the goods accepted and the amounts of any incidental and consequential damages are both speculative and indeterminate at this time. It is possible that, as Kabco maintains, plaintiff might prove that the mobile home is entirely without value in its present condition or that plaintiff's incidental and consequential damages are sufficiently high to justify an award in excess of $50,000, when coupled with the difference in value calculation. But it is far from a legal certainty that this result must necessarily attach, or that damages could never fall below $50,000, if plaintiff prevails on her MMWA cause of action.

Kabco urges the Court to follow an unpublished decision from the Eleventh Circuit, *Allen v. Toyota Motor Sales, U.S.A., Inc.*, 2005 WL 3096631 (11th Cir. Nov. 21, 2005). In *Allen*, the plaintiffs filed suit in state court based on a transaction in which they purchased an allegedly defective 2002 Lexus for $66,678.65. The defendant removed based on diversity of citizenship,

---

[8] To be sure, Kabco maintains in its brief that if plaintiff's allegations that the alleged defects in the mobile home cannot be cured are correct, then "the home should be considered entirely without value." (Defendant's Brief (doc. 15), ¶ 8.) That conclusion does not necessarily follow from the premise. It is not difficult to envision a vast array of "incurable defects" in a home that would not reduce the home's value to zero. Nor does the potentiality (and at this stage, it is nothing more than that) that certain repairs to the home may cost more than the value of the home necessarily reduce the value of the home to zero, as Kabco argues. (*Id.*, ¶ 10.) Besides, there are many scenarios under which Brown could prevail on her MMWA cause of action without the jury also finding incurable defects or repairs exceeding the home's value. Those possible outcomes defeat Kabco's argument that Brown must necessarily recover more than $50,000 if she prevails on her MMWA cause of action and that any sub-$50,000 damages award would be legally impermissible.

alleging that the amount in controversy exceeded $75,000. The Eleventh Circuit concluded that the defendant had met its burden of proving the amount in controversy by noting that one component of the plaintiffs' damages request had a value of $66,678.65, and also listing the other aspects of the plaintiffs' damages claim. The *Allen* court deemed this sufficient. Kabco's reliance on *Allen* is misplaced because, as a threshold matter, *Allen* is unpublished and therefore not binding. *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent."); *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000). More importantly, defendants here can derive no solace from *Allen* because the plaintiffs in that case had failed to plead a specific amount of damages, such that the *Allen* defendant was subject to the much lower "preponderance of the evidence" threshold of proof, rather than the rigorous "legal certainty" test, to establish federal jurisdiction. *Allen*, 2005 WL 3096631, *2. Simply put, Kabco's burden of proving federal jurisdiction is substantially more onerous than that confronting the *Allen* defendant. There is no indication in *Allen* as to whether the defendant in that case might have satisfied the "legal certainty" standard; thus, *Allen* does not bolster Kabco's position.

## IV.    Conclusion.

In a case where federal removal jurisdiction is predicated on a claim under the MMWA, jurisdiction exists only where the defendant proves "to a legal certainty that plaintiff, if she prevailed, would not recover below $50,000." *Burns*, 31 F.3d at 1097. The removing defendant has not satisfied this daunting threshold. There are simply too many intangibles and unknowns concerning the present value of the mobile home, the value derived by plaintiff from her use of the mobile home, and any incidental and consequential damages she faced. The Court cannot conclude on this record that a jury award of less than $50,000 on Brown's MMWA cause of action would be legally impermissible. For that reason, the undersigned finds that Kabco has failed to meet its burden of overcoming the deference and presumption of truth that attaches to the $50,000 cap recited in the specific amount-in-controversy allegations set forth in the Twenty-First Cause of Action in the Complaint.[9]

---

[9] The specific allegation in the Complaint that plaintiff seeks less than $50,000 is reinforced by the Affidavit of J. Charles McCorquodale (doc. 17), in which plaintiff's counsel expressly avers that the matter in controversy "is less than the sum of $50,000 as to all of Plaintiff's claims arising under the [MMWA]." *Id.* Such post-removal evidence is generally

Defendants having failed to satisfy their burden of establishing that federal removal jurisdiction is proper, plaintiff's Motion to Remand (doc. 5) is due to be, and the same hereby is, **granted**. Because subject matter jurisdiction is lacking, this action is hereby **remanded** to the Circuit Court of Clarke County, Alabama for further proceedings. Defendant Kabco's Motion to Strike Affidavit (doc. 18) is **denied**.

---

permissible in assessing removal jurisdiction, provided the jurisdictional facts that support removal are judged as of the time of removal. *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000). Defendants have filed a Motion to Strike (doc. 18) the Affidavit as lacking personal knowledge, not addressing the facts at the time of removal, being conclusory, and making legal conclusions that invade the province of the Court. These objections are meritless. In weighing motions to remand, courts in this Circuit credit representations of counsel that their clients will neither seek nor accept recovery exceeding the jurisdictional amount. *See, e.g., Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 (11th Cir. 2003) (crediting plaintiff's counsel's representation in motion to remand that plaintiff does not seek and would not accept damages in excess of jurisdictional amount); *Matthews*, 92 F. Supp.2d at 1289 (similar). The McCorquodale Affidavit is akin to those circumstances, and in any event is cumulative of statements offered in the Complaint and briefs. While this Affidavit is not as effective as those filed by plaintiff's counsel in related cases (as it does not expressly state that plaintiff will neither seek nor request recovery in excess of $50,000 on the MMWA cause of action), the Court is satisfied that the McCorquodale Affidavit is grounded in personal knowledge, reflects the state of affairs obtaining as of the time of removal (inasmuch as it echoes the amount-in-controversy allegations of the Complaint), and is not otherwise improper; therefore, the Motion to Strike is **denied**.

Notwithstanding the foregoing, plaintiff's counsel would be wise to heed the cautionary admonition of *Matthews*, wherein the court found that the removing defendants had failed to prove to a legal certainty that the amount in controversy in a MMWA claim exceeded $50,000, based in part on plaintiffs' counsel's representation that they would neither seek nor accept an amount in excess of $40,000 on their breach of warranty claim. 92 F. Supp.2d at 1289. In so ruling, the *Matthews* court cautioned plaintiffs that, if they later amended their complaint to seek damages in excess of that jurisdictional threshold, suggesting that they were engaging in manipulative forum-shopping chicanery, the court would not hesitate to impose "swift" and "painful" sanctions upon application. *Id.*; *see also Federated*, 329 F.3d at 808 & n.6 (observing that plaintiff's counsel are officers of the court and subject to Rule 11 sanctions for making representations for improper purposes, and that motions for sanctions may be initiated and decided even after underlying case has been resolved and is no longer pending); *Burns*, 31 F.3d at 1095 (presuming that plaintiff's counsel recognizes that representations regarding amount in controversy "have important legal consequences and, therefore, raise significant ethical implications for a court officer"). Having unequivocally committed his client to a $50,000 cap on recovery in both the Complaint and his Affidavit, plaintiff's counsel is expected scrupulously to honor the commitment in the state court proceedings.

DONE and ORDERED this 15th day of March, 2007.

                                                s/ WILLIAM H. STEELE
                                                UNITED STATES DISTRICT JUDGE